**Affirm and Opinion Filed March 21, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00855-CV**

**GARLAND INDEPENDENT SCHOOL DISTRICT, Appellant**
**V.**
**REEDER GENERAL CONTRACTORS, INC., Appellee**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-15806**

## MEMORANDUM OPINION ON REHEARING

Before Justices Molberg, Pedersen, III, and Miskel
Opinion by Justice Molberg

We deny appellant Garland Independent School District's motion for rehearing and, on our own motion, withdraw our January 26, 2024 memorandum opinion and vacate the judgment of that date. This is now the opinion of the Court.

In three issues, Garland Independent School District (the District) appeals the trial court's order denying its plea to the jurisdiction. The District argues the Texas Local Government Contract Claims Act[1] does not waive immunity for appellee Reeder General Contractors, Inc.'s claims for various reasons; the Legislature has

---

[1] TEX. LOC. GOV'T CODE §§ 271.151–.160.

not waived governmental immunity for equitable damages claims; and Texas Government Code § 2251 does not waive a school district's governmental immunity for attorney's fees claims. We affirm in this memorandum opinion.

## Background

On October 26, 2021, Reeder sued the District for breach of contract, alleging the two parties executed a contract for Reeder to perform construction work at several district campuses, including Jackson Middle School and Lyles Middle School. The parties executed the contract and related plan documents on February 7, 2018. On May 18, 2018, Reeder had to stop work on the Jackson project when it "discovered a previously undisclosed electrical feeder line running within the project's building foundation footprint[,]" making it "impossible for the piers to be constructed as called for in the plans." Reeder alleged the District and the District's architect did not complete their redesign for the project until October 16, 2018. Reeder alleged it incurred significant additional costs resulting from the six-month delay. It alleged, in accordance with contractual requirements, it submitted a change order (Proposed Change Order 38) on January 3, 2019, requesting $265,700 for "additional jobsite costs and general conditions it incurred due to the delay." Reeder substantially completed some of the work on December 5, 2019, and submitted a revised change order, and the parties, eighteen months later, eventually reached an agreement with the District's project manager for a $154,504 payment for the work. Reeder alleged the District presented the change order to the District's Board of

–2–

Trustees for approval in March 2021. The Board "agreed that Reeder was not at fault and was entitled to the change order," but Reeder alleged the District has nevertheless failed and refused to execute the change order. Reeder further alleged the District prevented Reeder from submitting a final payment request for retainage withheld on the project, despite the contract's requirement that retainage be paid within thirty days after completion of work. Reeder alleged $1,138,995.88 was due and payable for these breaches. Reeder also alleged a Prompt Payment Act violation and sought attorney's fees under "the terms of the contract and Texas law," including Chapter 2251 of the Texas Government Code.

On June 3, 2022, the District filed a plea to the jurisdiction. The District argued the trial court lacked subject matter jurisdiction because governmental immunity precluded Reeder's claims. Despite Texas Local Government Code § 271.152 (local government entity waives sovereign immunity to suit for breach of a contract entered into subject to Chapter 271, Subchapter I, of local government code), the District argued Reeder's claims did not fall within the Act's waiver because Reeder (1) could not establish the element of breach, (2) sought damages not allowed by § 271.153, and (3) failed to comply with the contract's "claims" process for resolving disputes. The District also argued the suit was "extracontractual in nature and thus sounds in equity despite its mischaracterization as a breach of contract case," and that Reeder's Prompt Payment Act claim did not fall within any waiver of governmental immunity.

The District also filed a brief in support of its plea to the jurisdiction with which it included an affidavit from Javier Fernandez, the District's Director of Facilities, Planning, and Construction Services. Fernandez stated Reeder failed to comply with the contract in several ways, including failing to file a "claim" with the District, to comply with the claims process, to file a written appeal of a decision of the architect, to file a written appeal of the program manager's decision, and to provide written notice of any interference by the District, architect, or program manager. Fernandez also stated the District had paid all compensation due under the contract.

On August 5, 2022, Reeder filed its first amended petition. Reeder alleged the construction contract involved work at five different campuses, but the work at issue in its suit related to Jackson Middle School and Lyles Middle School, where it was to build new band halls and renovate other facilities. Prior to submitting its bid, Reeder was provided a project manual, a set of general conditions for construction, and plans, which were all incorporated as part of the contract documents governing the parties' relationship. According to the contract, the intent of these documents was to "include all items necessary for the proper execution and completion of the work by [Reeder]." Reeder alleged it was obligated under the contract to study and compare the plans to actual observable site conditions prior to beginning its work "for the purpose of facilitating coordination and construction by [Reeder] and not the purpose of discovering errors, omissions, or inconsistencies." Reeder alleged

–4–

the contract stated Reeder had no responsibility for "damages resulting from errors, inconsistencies, or omissions in the contract documents or for differences between field measurements or conditions and the contract documents" unless Reeder should have recognized such inconsistencies in its comparison of plans and observable site conditions and then failed to report to the District's architect. The contract further stated Reeder was not "responsible for the adequacy of the . . . design required by" the plans.

Reeder alleged the District's plans, prepared by the District's architect, VLK Architects, Inc., were "riddled with inconsistencies, omissions, and errors that were not discoverable by [Reeder] in the exercise of its pre-work 'study and compare' obligations." These defects, in addition to rainfall and other weather conditions, significantly slowed Reeder's progress on the Lyles and Jackson projects.

Reeder discovered defects in the plans that prevented it from going forward on both projects. Reeder alleged it stopped work and submitted requests for information and then waited for the District, VLK, and the project manager, Jacobs, to inform it how to proceed with a redesign or workaround. Under the contract, responses to such requests were to be made "reasonably promptly," but Reeder alleged the District, VLK, and Jacobs took 60 days on the Lyles project and 151 days on the Jackson project to decide on a new course of action.

Reeder alleged its excavation subcontractor on the Jackson project uncovered three subsurface electrical lines on May 18, 2018, running east to west in a location

the plans called for a crawl space in a band hall it was constructing. The lines were not disclosed anywhere in the plans prepared by VLK. Reeder halted work and reported the discovery to VLK and Jacobs, who, on May 21, 2018, ordered Reeder to stop work on the Jackson band hall until VLK, Jacobs, and the District decided how to proceed. Two days later, Reeder submitted a request for information seeking direction on how to proceed. It alleged that, at subsequent owner-architect-contractor meetings, Reeder submitted look-ahead schedules documenting the time impact of the delay. Reeder alleged VLK first responded to the request for information on July 10, 2018, but did not include a redesign of the plans but "merely instructed [Reeder] to hire a third-party inspector to run some tests on the existing lines." On July 31, 2018, VLK circulated a letter to Reeder in which it blamed Reeder for not discovering the electrical line before excavating. Reeder alleged that Jacobs had shown VLK a copy of the as-built drawing depicting the subsurface lines that VLK failed to incorporate into the plans. Reeder responded to VLK with detailed information about the pre-dig tests and efforts it took and reiterated it was experiencing a critical path delay on the band hall resulting in extended time costing $1,873 per day.

Reeder alleged that, when the District, Jacobs, and VLK were deliberating, VLK asked Reeder to price various options by submitting cost proposals. Reeder's proposals specified the proposed costs "did not include the delay claim."

Reeder alleged that on October 7, 2018, VLK advised Reeder that the parties would install additional piers to support the foundation and requested Reeder to submit a cost proposal. Reeder's $32,602 proposal was approved, memorialized, and signed by the District, Jacobs, VLK, and Reeder on November 5, 2018, in Contract Expenditure Contingency Approval No. 11, which stated the reason for the change was a "contract document error or omission."

On January 4, 2018, Reeder submitted Proposed Change Order 38 seeking a 151-day extension of its completion deadline on the Jackson project and $265,700 in general condition costs. VLK responded by questioning whether Reeder had given proper notice of its claim under the general conditions and challenging Reeder's calculation of its costs. Reeder responded arguing its request for information and subsequent e-mails gave notice of its potential claim and defending its costs assessment.

Reeder alleged it met with Fernandez, Jacobs, and VLK to discuss Reeder's delay claim over a course of months. After each meeting, Reeder submitted revised proposed change orders, seeking lower amounts. On June 11, 2020, Reeder submitted a third and final revision in which it sought $154,504. The District's Board of Trustees convened on February 9, 2021, and Fernandez represented to the board that Reeder fulfilled its contractual obligation to timely submit a claim, the claim was not resolved because Jacobs deferred its resolution until completion of the project, and the delay was not Reeder's fault. Four months later, Reeder alleged the

–7–

District "completely chang[ed] course," blaming Reeder for failing to discover the electrical lines and demanding reimbursement of money the District had already paid Reeder. The District refused Reeder's claim for $154,504 and assessed Reeder liquidated damages at a $1,500-per-day rate for entirety of the 151-day delay.

Reeder alleged it formally demanded pre-suit mediation on June 24, 2021, and when its request went unanswered, it filed suit. Reeder sought damages for breach of contract, Prompt Payment Act interest under Texas Government Code § 2251.021, and attorney's fees. Reeder alleged the District breached the contract by (1) providing Reeder defective or inadequate plans; (2) failing to respond to Reeder's requests for information within a reasonable period of time; (3) holding Reeder liable for damages resulting from delays caused by errors in the plans; (4) impeding Reeder's progress on the projects and interfering with its ability to meet deadlines by failing to timely resolve design errors; (5) directing changes in Reeder's work, approving cost proposals to the work, and then failing to pay Reeder the agreed-upon amounts; (6) failing to pay Reeder the amount sought in its final revised proposed change order relating to the concealed line delay; (7) withholding payment owed Reeder based on the assessment of liquidated damages for excusable performance delays resulting from acts or neglect of the District or VLK; and (8) withholding payment owed Reeder on the Jackson and Lyles projects in reliance on an unenforceable liquidated damages clause. Reeder alleged the District's material breaches resulted in actual damages of no less than $1,063,735.50 in total,

–8–

which included $429,588.57 withheld by the District on the Jackson project in reliance on the liquidated damages clause, $413,046.95 withheld on the Lyles project in reliance on the liquidated damages clause, $154,504 for the final proposed change order on the Jackson project, $42,071 for contract expenditure contingency approvals on the Lyles project, $23,827 for contract expenditure contingency approvals on the Jackson project, and $697.98 for retainage balance still owed.

Reeder also filed a response to the plea to the jurisdiction with which it included jurisdictional evidence. Among other things, Lane Reeder, Vice President and Chief Operating Officer of Reeder, and Tanner Whitson, a project executive with Reeder, substantiated the amended petition's factual allegations in affidavits. Reeder also included an application and certificate for payment that detailed the original contract sum, the net change resulting from change orders, previous payments, and a remaining balance of $1,138,995.88.

On August 17, 2022, the trial court heard the District's plea to the jurisdiction; the parties reiterated the arguments made in their papers. Reeder also clarified it was dropping its claim for attorney's fees under Chapter 2251 of the government code, and the trial court and parties proceeded with the hearing on that basis. The parties indicated they would file supplemental briefing with the court within a week, and the court told the parties it would wait to rule until it had "seen everything."

On August 24, 2022, Reeder filed a supplemental brief in which it stated, among other things, it was "filing its second amended petition to remove its prior

redundant request for fees under Chapter 2251." Reeder filed the second amended petition the next day; it differed from the first amended petition in two respects. First, it removed its claim for attorney's fees under Chapter 2251 and only sought fees "pursuant to Section 13.2.1 of the General Conditions to the parties' Contract." Second, it added a general allegation that the District materially breached the contract by "not paying Reeder all sums due and owing under the Contract."

On August 25, 2022, shortly after Reeder filed its second amended petition, the trial court denied the District's plea to the jurisdiction. This appeal followed.

**Discussion**

The District contends it enjoys immunity from Reeder's claims because its immunity was not waived under the Texas Local Government Contract Claims Act. *See* TEX. LOC. GOV'T CODE §§ 271.151–.160. It argues the Act does not waive immunity for what it refers to as Reeder's "liquidated damages claim," for claims that a school district complied with a contractual term, or for claims that do not comply with the Act's requirements, and that the District is immune from Reeder's suit because Reeder failed to comply with contractual adjudication procedures.

A trial court's subject matter jurisdiction is defeated by sovereign immunity, which is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether a court has subject matter jurisdiction is a question of law. *Id.* at 226. Generally, a plaintiff has the burden to plead facts affirmatively demonstrating the court's subject matter

jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). Whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law we review de novo. *Miranda*, 133 S.W.3d at 226. However, disputed evidence of jurisdictional facts implicating the merits of the case may require determination by the fact finder in some cases. *Id.* When a plea to the jurisdiction challenges the pleadings,

> we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend.

*Id.* at 226–27 (internal citations omitted). "When assessing a plea to the jurisdiction, our analysis begins with the live pleadings." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). If a plea to the jurisdiction challenges the existence of jurisdictional facts,

> we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as soon as practicable. Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the

–11–

relevant evidence to determine if a fact issue exists. . . . If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

*Miranda*, 133 S.W.3d at 227–28 (internal citations omitted).

"Political subdivisions of the state—such as counties, municipalities, and school districts—share in the state's inherent immunity." *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429–30 (Tex. 2016). Like sovereign immunity, the governmental immunity of a political subdivision can be waived, and we defer to the Legislature to do so by statute. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). Statutory immunity waivers must be expressed in "clear and unambiguous language." *Byrdson Servs., LLC v. S. E. Tex. Reg'l Planning Comm'n*, 516 S.W.3d 483, 485 (Tex. 2016).

In the Local Government Contract Claims Act, the Legislature has waived governmental immunity for certain breach of contract claims. Texas Local Government Code § 271.152 provides:

A local governmental entity that is authorized by statute to enter into a contract and that enters into a contract subject to this subchapter waives immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE § 271.152. A "contract subject to this subchapter" means:

[A] written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity[.]

*Id.* § 271.151(2)(A).

Generally, the total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to the Act is limited to:

> (1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration; (2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract; (3) reasonable and necessary attorney's fees that are equitable and just; and (4) interest as allowed by law, including interest as calculated under Chapter 2251, Government Code.

*Id.* § 271.153(a). "Damages awarded in an adjudication brought against a local governmental entity arising under a contract subject to this subchapter may not include: (1) consequential damages, except as expressly allowed under Subsection (a)(1); (2) exemplary damages; or (3) damages for unabsorbed home office overhead." *Id.* § 271.153(b). These limits apply to "the amount due by a governmental agency on a contract once liability has been established"—they do not foreclose the determination of whether liability exists. *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 840 (Tex. 2010). However, § 271.152 does not waive immunity from suit on a claim for damages not recoverable under § 271.153. *Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cnty.*, 449 S.W.3d 98, 110 (Tex. 2014).

Furthermore, contractual adjudication procedures are generally enforceable:

> Adjudication procedures, including requirements for serving notices or engaging in alternative dispute resolution proceedings before bringing a suit or an arbitration proceeding, that are stated in the contract subject to this subchapter or that are established by the local governmental entity and expressly incorporated into the contract or incorporated by reference are enforceable except to the extent those procedures conflict with the terms of this subchapter.

TEX. LOC. GOV'T CODE § 271.154. This notice provision is "an affirmative defense to the merits of the suit," but is "not a matter that deprives the trial court of subject matter jurisdiction." *Romulus Grp., Inc. v. City of Dallas*, No. 05-16-00088-CV, 2017 WL 1684631, at *5 (Tex. App.—Dallas May 2, 2017, pet. denied) (mem. op.); *see also Tex. Ass'n of Sch. Bds. Risk Mgmt. Fund v. Greenville Indep. Sch. Dist.*, No. 05-21-01012-CV, 2022 WL 2816532, at *3 (Tex. App.—Dallas July 19, 2022, pet. denied) (mem. op.).

The parties disagree whether Reeder's second amended petition is its live pleading for purposes of our review. Reeder assumes it is, while the District argues it is not because the trial court's order denying the plea to the jurisdiction did not reference "all pleadings." We reject the District's argument. The rules of civil procedure do not prescribe a deadline for filing amended pleadings before the hearing or submission of a plea to the jurisdiction. *City of McKinney v. Hank's Rest. Group, L.P.*, 412 S.W.3d 102, 110 (Tex. App.—Dallas 2013, no pet.). In *Hank's Restaurant Group*, we concluded an amended pleading filed after a hearing on the plea to the jurisdiction but before the trial court ruled on the plea was the live

–14–

pleading when the trial court stated it would consider jurisdictional briefs filed after the hearing and the order on the plea recited that the judge "reviewed the pleadings of the parties." *Id.* Here, at the hearing on the plea, the trial court and the parties proceeded on Reeder's representation that it would amend its pleading to no longer seek fees under Chapter 2251; the trial court stated it would consider supplemental briefing filed after the hearing and would wait to rule until it had "seen everything"; Reeder filed such a supplemental brief that, among other things, stated it was filing a second amended petition; and Reeder filed the second amended petition the next day, before the trial court denied the District's plea to the jurisdiction. Given all of this,[2] we conclude the second amended petition is the live pleading for purposes of our review. *See id.*

We conclude Reeder pleaded facts affirmatively demonstrating the trial court's jurisdiction by pleading a substantial claim meeting the Act's conditions. *See Zachry*, 449 S.W.3d at 109. In its live pleading, Reeder alleged the District entered into a contract subject to the Act and breached the contract. Reeder alleged

---

[2] These circumstances differ from those present in *Tejas Motel, L.L.C. v. City of Mesquite by & Through Bd. of Adjustment*, No. 05-19-00667-CV, 2020 WL 2988566, at *3 (Tex. App.—Dallas June 4, 2020, pet. denied) (mem. op.). In that case, the plaintiff filed an amended petition two days before a hearing on the defendant's motion for summary judgment and plea to the jurisdiction. *Id.* The defendant objected to the amended petition as untimely. *Id.* On appeal, after the trial court granted the plea and dismissed the case, we stated that "[w]e do not presume trial courts granted leave to file untimely pleadings when the order at issue lacks a recitation that the court reviewed or considered 'all pleadings,'" and we did not consider the amended petition as the live pleading. *Id.* Here, no question is raised as to the timeliness of Reeder's second amended petition, which was not filed within seven days of a hearing on a summary judgment motion, as in *Tejas Motel*. *See* TEX. R. CIV. P. 63; *John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 653 (Tex. App.—Dallas 2013, pet. denied) ("A summary judgment proceeding is a trial within the meaning of rule 63.").

the District breached the contract by failing to pay Reeder all sums due and owing under the contract, and by providing defective plans and generally causing delays while wrongfully holding Reeder liable for damages resulting from the delays. Furthermore, Reeder requested damages recoverable under § 271.153 because it sought damages it alleged were due and owing under the contract, including amounts for increased costs resulting from District-caused delays, amounts owed for change orders or additional work it was directed to perform, reasonable and necessary attorney's fees, and interest allowed under Chapter 2251 of the government code.

In reaching this conclusion, we necessarily reject the District's constitutional argument that Reeder seeks "extra compensation." The Texas Constitution states: "The Legislature shall have no power to grant, or to authorize any county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into, and performed in whole or in part . . . ." TEX. CONST. art. III, § 53. We do not read Reeder's pleadings to seek extra compensation but instead only the amount it alleges is due and owing under the contract. The District contends it properly withheld liquidated damages pursuant to the contract, while Reeder disputes this and argues the liquidated damages clause is unenforceable. We cannot conclude this disagreement converts Reeder's claim into something other than a breach of contract claim; instead, this question goes to the merits dispute between the parties and the question of the amount due and owing to Reeder. Accordingly,

we cannot conclude Reeder seeks extra compensation beyond the contract or that § 271.152 does not waive immunity for Reeder's claim seeking amounts improperly withheld by the District in reliance on the liquidated damages provision. *Cf. Zachry*, 449 S.W.3d at 119–20 (in breach of contract suit where immunity was waived, plaintiff was entitled to recover amounts improperly withheld by defendant under liquidated damages provision).

Likewise, we reject the District's argument that Reeder failed to allege a substantial claim because it failed to allege a breach of the liquidated damages provisions of the contract and failed to provide evidence of a breach of the liquidated damages provision. Reeder does not seek liquidated damages independently; instead, Reeder alleged the District breached the contract by failing to pay the full amount due and owing under the contract, and it argues it raises the enforceability of the liquidated damages provision in anticipation of the District's defense based upon that provision operating as an offset. Given this, for purposes of the immunity question before us, we conclude Reeder sufficiently pleaded a breach of contract claim that falls within the clear waiver of immunity in § 271.152.

The District further argues it is immune from Reeder's suit because Reeder failed to comply with the contract's adjudication procedures. The District relies on local government code § 271.154 (adjudication procedures stated in contract are enforceable except to extent procedures conflict with subchapter). The District contends this provision limits the scope of § 271.152's waiver and that *Zachry*

compels this conclusion. In *Zachry*, the supreme court observed that "[w]hether the various provisions of the Act define the scope of the waiver of immunity depends on the statutory text." *Zachry*, 449 S.W.3d at 107–08. As to the question before it, the court concluded § 271.152 does not waive immunity from suit on a claim for damages not recoverable under § 271.153. *Id.*

Notably, the court did not hold that § 271.154 limits the Act's waiver of immunity. On the contrary, the supreme court observed that § 271.152 "does not preclude . . . *other contractual procedures*, or confer immunity or suggest joint enterprise." *Zachry*, 449 S.W.3d at 110 (emphasis added). Further, as stated above, this Court has previously concluded that the Act's immunity waiver is not limited by § 271.154. *See City of Mesquite v. PKG Contracting, Inc.*, 263 S.W.3d 444, 448 (Tex. App.—Dallas 2008, pet. denied) (concluding that whether a party complied with notice provisions of contract may be an affirmative defense to the merits of the suit but does not deprive the trial court of subject matter jurisdiction). Following *Zachry*, we reaffirmed this conclusion in *Romulus Group*, 2017 WL 1684631, at *5–6 (concluding that "the waiver of immunity is not dependent on compliance with section 271.154 as it is for sections 271.157 (no immunity to suit for tort liability), 271.156 (no waiver of immunity to suit in federal court), and 271.153 (limitations on adjudication awards)"), and we rejected the contention that *Zachry* called it into question. We follow our precedents and again conclude notice provisions are not jurisdictional requirements, and we therefore reject the District's argument.

The District also argues the Legislature has not waived immunity for the types of damages sought by Reeder. The District argues Reeder's claim for $154,504 in delay damages is not due and owing under the contract, which limits the circumstances under which the District is liable for delays to acts constituting interference by the owner, architect, or program manager, and the District argues its evidence shows the alleged delay was not due to interference. The District also contends some of Reeder's claims are based upon unapproved change orders.

But these arguments go to the District's liability and do not address whether immunity has been waived. Section 271.152's waiver of immunity does not depend on ultimate liability. *See Kirby*, 320 S.W.3d at 840; *Zachry*, 449 S.W.3d at 109. Even if the contract is, in the end, determined to preclude recovery of particular damages sought by Reeder, at this stage, Reeder has pleaded damages recoverable under § 271.153, and we do not here address whether it will be able to recover those damages. *See A Status Constr. LLC v. City of Bellaire*, No. 01-21-00326-CV, 2022 WL 2919934, at *6 (Tex. App.—Houston [1st Dist.] July 26, 2022, no pet.) (mem. op.).

Relatedly, the District argues that Reeder's claims are more properly characterized as claims for unjust enrichment or quantum meruit, for which there is no waiver of immunity. But in determining a question of jurisdiction, we look to the pleadings, which we construe liberally in favor of the plaintiff and consider the pleader's intent. *City of Houston v. Williams*, 353 S.W.3d 128, 141 (Tex. 2011).

Because Reeder's pleadings only allege breach of contract, we reject the District's contentions to the contrary. *See Port Freeport v. RLB Contracting Inc.*, 369 S.W.3d 581, 591 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (concluding the defendant mischaracterized the plaintiff's pleadings as seeking equitable claims when the pleadings only alleged claims for breach of contract).

Finally, the District argues a school district's immunity for attorney's fees claims under § 2251.043 has not been waived by the Legislature. But in Reeder's live petition, it seeks only attorney's fees under the contract. Given this, we overrule the District's final issue. *See* TEX. LOC. GOV'T CODE § 271.153(a)(3) (total amount of money awarded for breach of a contract may include "reasonable and necessary attorney's fees that are equitable and just"). The District's three appellate issues are overruled.

## Conclusion

The trial court's order denying the District's plea to the jurisdiction is affirmed.

/Ken Molberg/

220855f.p05

KEN MOLBERG
JUSTICE

–20–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GARLAND INDEPENDENT
SCHOOL DISTRICT, Appellant

No. 05-22-00855-CV     V.

REEDER GENERAL
CONTRACTORS, INC., Appellee

On Appeal from the 162nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-21-15806.
Opinion delivered by Justice
Molberg. Justices Pedersen, III and
Miskel participating.

On the Court's own motion, we WITHDRAW our opinion and VACATE our judgment of January 26, 2024.  This is now the judgment of the Court.

In accordance with this Court's opinion of this date, the order of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee REEDER GENERAL CONTRACTORS, INC. recover its costs of this appeal from appellant GARLAND INDEPENDENT SCHOOL DISTRICT.

Judgment entered this 21st day of March, 2024.